UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JONATHAN DOE, a minor, by and through DOROTHY DOE, his legal guardian and next friend,<br><br>        Plaintiff,<br><br>-vs-<br><br>TODD COUNTY SCHOOL DISTRICT; MICHAEL V. BERG, Assistant Principal of Todd County High School, VICTORIA SHERMAN, Principal of Todd County High School, and RICHARD BORDEAUX, Superintendent of Schools, in their individual and official capacities<br><br>        Defendants. | CIV. 07-3029<br><br><br><br><br><br><br><br>MEMORANDUM OPINION<br>AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

[¶1] Plaintiff Jonathan Doe ("Jonathan" or "Doe" or "plaintiff"), by and through his legal guardian, Dorothy Doe ("Dorothy")[1], filed this action pursuant to 42 U.S.C. § 1983[2], alleging that the Todd County School District ("TCSD"), Superintendent Richard Bordeaux ("Bordeaux"), Victoria Sherman ("Sherman"), and Michael Berg ("Berg") (collectively "defendants") deprived plaintiff of his constitutionally protected right to a public education, acting without due process

---

[1] "Doe" is a pseudonym.

[2] 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

of law to deprive plaintiff of his right to equal protection under the law. Defendants filed a motion for summary judgment (Doc. 48). Defendants claim that plaintiff has failed to establish a prima facie case under 42 U.S.C. § 1983, specifically that plaintiffs are unable to establish that defendants failed to provide constitutionally sufficient notice and failed to provide a due process hearing. Defendants have also filed a motion for reconsideration (Doc. 68). Plaintiff has filed a motion for partial summary judgment as to the issue of liability (Doc. 34). All motions are addressed in this order.

## FACTUAL BACKGROUND

[¶2] On September 8, 2005, Doe was a 16 year old freshman student at Todd County High School ("Todd County") in Mission, South Dakota, on the Rosebud Indian Reservation. While attending "mainstream" classes at Todd County, Doe received approximately six hours of educational instruction per day, or about 30 hours per week. After school on September 8, 2005, Doe and another student engaged in a physical altercation at Todd County. On September 9, 2005, Todd County High School Assistant Principal Michael Berg called Doe into his office and questioned him about the September 8 altercation. Prior to being questioned by Berg, Doe handed a pocket knife, with a blade length of roughly two inches, which he possessed, to another student named E.G.

[¶3] While being questioned by Berg, Doe became angry and left Berg's office without Berg's permission. Berg sent someone after Doe to have him return to Berg's office, and Doe returned, whereby Berg continued his questioning. During the questioning, Berg showed Doe a knife, and Doe admitted it was the knife he possessed on school grounds on September 9, 2005. Doe also admitted to being in a fight on school grounds on September 8, 2005.

[¶4] Berg then read to Doe the "disciplinary protocol" from the student handbook, which addressed weapons and short-term and long-term suspensions. Berg told Doe that he would be suspending Doe from school because of Doe's September 8 fight and his September 9 possession of the pocket knife. Berg did not tell Doe how long the suspension would last, but did indicate that the suspension might be longer than ten school days.

[¶5] After questioning Doe, Berg called Doe's grandfather, Kelly, to come get Doe from school. When Kelly arrived, Berg informed him that Doe had been fighting and a knife was

found on school grounds, which Doe admitted was his. Berg then informed Kelly that Doe was suspended from all regular classes at Todd County High School.

[¶6] Because of a learning disability in reading, Doe was on an individualized education program (IEP) and was receiving special education services before he was suspended on September 9. Consequently, the TCSD was legally required to have a meeting to determine if the misconduct for which Jonathan had been suspended was related to his disability (the "manifestation determination"), and the TCSD was required to have that meeting before Jonathan could be suspended for more than ten school days.[3]

[¶7] Berg called Deb Lucas, Exceptional Education Director, to his office, and she also questioned Doe about the fight and knife incidents. Lucas then had a conversation with Kelly about conducting a manifestation determination meeting. Following her conversation with Doe and Kelly, Lucas called Doe's grandmother, Dorothy, to schedule a manifest determination meeting.

[¶8] On September 12, 2005, Berg sent Dorothy a letter informing her that he was suspending Doe from all classes and activities at the Todd County High School for violating school rules prohibiting fighting and possessing a dangerous weapon. The letter informed Dorothy that suspension was effective starting September 8, 2005, and would continue until a hearing with the school board could be arranged but the letter did not specify when such a hearing would be scheduled.

---

[3]Under the Individuals with Disabilities Education Act (IDEA), 20 USC §§ 1400 *et seq.*, and the S.D. Department of Education's Administrative Rules on special education, whenever school administrators seek to remove a student with a disability from his regular educational placement for more than ten school days for disciplinary misconduct, in addition to the statutory and constitutional due process procedures it must provide to all students, the school district is required to follow certain statutory procedures set forth in Section 1415 of the IDEA, including a manifestation determination and educational instruction in an interim alternative educational setting during any period of suspension from regular classes lasting more than ten school days.

Generally, under IDEA, if the student's misconduct was not a manifestation of his disability, a district's administrators can continue to exclude the student from his regular classes for more than ten school days and impose a long-term suspension in the same way they would to a non-disabled student, but they must then provide educational services to the suspended student in an "interim alternative educational setting" during the long-term suspension.

3

[¶9] On September 13, 2005, the TCSD conducted a manifestation determination meeting in which Dorothy and Jonathan were present, as were Sherman, Lucas, and teachers Carol Galbraith and Brenda Franklin. The finding of the manifestation determination meeting was that Doe's misconduct was not a manifestation of his disability, which meant that the TCSD could impose discipline on Jonathan as it would on a student who did not receive special educational services, including a suspension from regular classes for more than ten school days. At this meeting, Lucas informed Dorothy that Doe could not return to regular classes due to his possession of a knife, and a change of placement based on Doe's possession of the knife, was necessary. At no point during the September 13 meeting were Dorothy or Jonathan informed that Jonathan would no longer be "on suspension" after his change of educational placement.

[¶10] As a result of the IEP meeting, Doe was removed from his regular high school classes and placed in an alternative educational setting beginning on September 19, 2005. Doe's interim alternative educational setting consisted of Doe receiving educational instruction from the After School Program, which consisted of two hours of instruction a day, after school, four days a week. Thus, as a result of Doe's change of placement, Doe received approximately 22 hours less instruction per week prior to his change of placement.

[¶11] On September 21, 2005, the tenth day of Doe's exclusion from regular classes, Dorothy delivered a letter to Berg in which she requested a hearing in front of the school board to challenge Doe's suspension from regular high school classes. Following receipt of Dorothy's letter, Berg responded with a letter dated September 29, 2005, in which Berg wrote that "no-long term suspension [was] presently in effect which could result in an appeal to the school board and a hearing before the school board."

[¶12] On October 12, 2005, another IEP meeting was held, during which Dorothy requested that Jonathan complete behavioral assessments as well as receive counseling in an effort to help develop a plan for Jonathan's "transition" back to the high school. Another IEP meeting was held on November 2, 2005, in which the behavioral assessments were reviewed and a determination was made that Doe could return to Todd County High School. Doe returned to Todd County High School on November 3, 2005 - 38 days after his removal from "regular" high school classes.

## DECISION

### I. DOE'S MOTION FOR SUMMARY JUDGMENT

[¶13]    The summary judgment standard is well known and has been set forth by this court in numerous opinions. See Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corporation v. Catrett, 477 U.S. at 325, 106 S.Ct. at 2554. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553. In considering a motion for summary judgment, this Court must view the facts in the light most favorable to the

non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

[¶14]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). An essential principle of due process is that a deprivation of life, liberty, or property must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 313 (1950). The defendants do not dispute that the laws of the State of South Dakota establish a right to a public education. The United States Supreme Court has characterized such a right as a property interest. *See* Goss v. Lopez, 419 U.S. 565, 575 (1975) ("Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."). The defendants further concede that, before there can be a significant deprivation of any property right, including the right to a public education, certain minimum due process procedures must be followed. In this case, the primary dispute is whether the minimum due process rights vis-a-vis public school disciplinary proceedings were violated as to Doe. To determine what procedural protections the Constitution requires in a particular case, the Court weighs several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

[¶15]  Doe alleges three counts in his complaint. He argues that the defendants failed to provide him with adequate notice, failed to provide a due process hearing within ten days of his

suspension, and failed to train and supervise its employees regarding the rights of due process. Doe relies on SDCL 13-32-4, which provides in pertinent part that:

> The South Dakota Board of Education shall promulgate rules pursuant to chapter 1-26 to establish administrative due process procedures for the protection of a student's rights. The administrative due process procedures shall include a requirement that the school give notice of a student's due process rights to the parent or guardian of the student at the time of suspension or expulsion. Each school district board shall provide a procedural due process hearing, if requested, for a student in accordance with such rules if the suspension or expulsion of the student extends into the eleventh school day.

SDCL 13-32-4.2 provides the procedure for imposition and appeal of suspensions:

> The school board in any district may authorize the summary suspension of pupils by principals of schools for not more than ten school days and by the superintendent of schools for not more than ninety school days. In case of a suspension by the superintendent for more than ten school days, the pupil or his parents or others having his custodial care may appeal the decision of the superintendent to the Board of Education. Any suspension by a principal shall be immediately reported to the superintendent who may revoke the suspension at any time. In event of an appeal to the board, the superintendent shall promptly transmit to the board a full report in writing of the facts relating to the suspension, the action taken by him and the reasons for such action; and the board, upon request, shall grant a hearing to the appealing party. No pupil may be suspended unless:
>
> (1) The pupil is given oral or written notice of the charges against him;
>
> (2) The pupil is given an oral or written explanation of the facts that form the basis of the proposed suspension; and
>
> (3) The pupil is given an opportunity to present his version of the incident.
>
> In the event of a suspension for more than ten school days, if the pupil gives notice that he wishes to appeal the suspension to the board, the suspension shall be stayed until the board renders its decision, unless in the judgment of the superintendent of schools, the pupil's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process, in which case the pupil may be immediately removed from school, and the notice and hearing shall follow as soon as practicable.

[¶16]   Whether or not Doe was afforded adequate due process procedures depends on the type of suspension Doe received. Defendants argue that Doe's suspension was less than ten days and therefore, the notice given to Doe was sufficient under South Dakota law and Goss since they

7

gave Doe notice of the charges against him, an explanation of the facts that formed the basis of the suspension, and an opportunity for Doe to respond to the charges against him. The Court rejects such contentions and determines that Doe's suspension was in excess of ten school days. The statutory and Constitutional due process requirements for long-term suspensions were not met as to Doe.

[¶17]   Defendants admit that, when Berg suspended Doe, Berg intended it to be a long-term suspension.[4] Defendants' Answer, *Response 12*. Therefore, from a subjective view, it is apparent that the defendants intended Doe's suspension to last at least eleven days.

[¶18]   Defendants claim that Doe's suspension lasted only four days - September 8, September 9, September 12, and September 13. Brief in Support of Defendant's Motion for Summary Judgment, *17*. From September 14 through November 2, school records show that Doe was attending school in a different setting - the after-school program. Id. The defendants, therefore, argue that since Doe was not excluded from school, he was not suspended. Id. The Court disagrees. The crucial inquiry in determining whether or not Doe was suspended is not *where* Doe was receiving his education following the commencement of his suspension on September 9. Rather, the proper analysis is to look at the quality and quantity of classroom instruction given to him while he was removed from regular high school classes. *See e.g.* Cole By and Through Cole v. Newton Special Mun. Separate School Dist., 676 F.Supp. 749, 751-752 (S.D.Miss.,1987)

> Defendants' position appears to be that because plaintiff was physically present on school grounds, the due process requirements for suspensions are not applicable. The court is of the opinion that the physical presence of a student at school is not conclusive as to whether school officials are excused from according a hearing in connection with imposing in-school isolation characterized by exclusion from the classroom . . . The primary thrust of the educational process is classroom instruction; in both situations the student is excluded from the classroom.

The analysis in Newton is persuasive here.

---

[4]South Dakota Administrative Rule 24:01:01:01(2) defines a long-term suspension as "the exclusion of a pupil by the superintendent or school board from a class or classes or from school for more than 10 but not more than 90 school days."

[¶19] Prior to his suspension, Doe was receiving approximately 30 hours of educational classroom instruction per week. Defendants' Response to Plaintiff's Statement of Uncontested Facts, *Response 2*. Following his suspension, Doe received approximately 8 hours of classroom instruction per week. Plaintiff's Statement of Uncontested Facts, *Response 45*. Thus, after Doe was transferred to the alternative educational setting, the number of hours of classroom instruction he received each week decreased by over 73%. Such a reduction in weekly classroom instruction is hardly *de minimus* and is, at the very least, a "constructive" suspension.

[¶20] Defendants admit that the IEP meeting was called and the decision to place Doe in an alternative educational setting were made *as a result* of Doe's behavior on September 9. Brief in Support of Defendants' Motion for Summary Judgment, *3*. The IEP meeting and decisions made at that meeting were related directly to Doe's behavior in violation of the Student Handbook, not his academic performance. Regardless of how the defendants classify their actions, the fact remains that the IEP meeting was called as a result of Doe's behavior in which a decision was made to remove him from regular classes and give him a 73% reduction in education instructional hours per week for a total of 38 days. This is equals a "de facto" long-term suspension and the defendants cannot insulate themselves from affording Doe necessary due process requirements when imposing such a suspension simply by claiming that its actions are a "change-in-IEP-status."

[¶21] Defendants claim that, when the IEP team ordered a change of placement for Doe on September 13, Doe's suspension ended. Brief in Support of Defendants' Motion for Summary Judgment, *4*. However, the defendants do not have one scintilla of evidence detailing how a change of placement results in the end of a suspension. The defendants' argument, apparently, is that a suspension and change of placement are two mutually exclusive events. They offer no law to support this argument and the Court rejects the contentions of defendants.

[¶22] With Doe's suspension now being properly classified as a long-term suspension, the next point of analysis is to determine whether or not the due process requirements of notice and a hearing were afforded to him. The Administrative Rules of the Department of Education of the State of South Dakota ("AR") set forth basic due process steps that are required to be given to all students when a school imposes a short or long-term suspension. Chapter 24:04:03 - 24:04:08

governs long-term suspensions. AR 24:07:03:01 requires that the superintendent file a written report with the school board regarding the long-term suspension.[5] There is nothing in the record to show that Superintendent Bordeaux even prepared or filed such a report. AR 24:07:03:02 sets forth the procedures for giving a student being suspended a notice and the opportunity to be heard regarding a long-term suspension. AR 24:07:03:02 provides:

> If the superintendent finds grounds for a long-term suspension from a class or classes, the superintendent may exclude the pupil from a class or classes by using the short-term suspension procedure in § 24:07:02:01. The superintendent shall give a written notice to the pupil's parent or to a pupil who is 18 years of age or older or an emancipated minor and may schedule a hearing. The notice shall contain the following minimum information:
>
> (1) The policy allegedly violated;
>
> (2) The reason for the disciplinary proceedings;
>
> (3) Notice of the right to request a hearing or waive the right to a hearing;
>
> (4) A description of the hearing procedure;
>
> (5) A statement that the pupil's records are available at the school for examination by the pupil's parent or authorized representative; and
>
> (6) A statement that the pupil may present witnesses.
>
> If a hearing is requested, the superintendent shall give notice to each school board member of an appeal to the board for a hearing. The superintendent shall set the date, time, and place for the hearing and send notice by first class mail to each school board

---

[5] The superintendent must file a sealed, written report with the school board by the end of the fifth school day following the first day of the long-term suspension and may request that a hearing be held before the school board. The report must include the facts of the situation, the action taken, the reasons for the action, and the superintendent's decision or recommendation. The report must remain in the possession of the school board secretary or business manager, sealed and unavailable for review by individual school board members, until the time set for a hearing. The superintendent must send a copy of the report to the pupil's parent or to the pupil if the pupil is 18 years of age or older or an emancipated minor at the same time the report is filed with the school board's secretary or business manager.

member and by certified mail, return receipt requested, to the pupil's parent or to a pupil who is 18 years of age or older or an emancipated minor.

If no hearing is requested or the hearing is waived, the action of the superintendent is final.

[¶23] Superintendent Bordeaux did not provide any notice to Doe or Doe's family regarding his suspension. Berg sent a letter on September 12 stating that Doe had violated several provisions in the Student Handbook and that he was suspending Doe for violating those policy provisions. However, Berg's letter never gave Doe or Dorothy "notice of the right to request a hearing or waive the right to a hearing." In fact, Berg's letter indicated that it was the *school board* who reserved the right to hold a hearing on the matter, not Doe or Dorothy. Giving Doe or Dorothy - the individual whose property interest is being jeopardized - the option to have a hearing challenging Doe's suspension is precisely what the concept of due process embodies. As this Court held in Waln By and Through Waln v. Todd County School District, 388 F.Supp.2d 994, 1002 (D.S.D. 2005), a case involving the same defendants as here, "the *defendants* shouldered the responsibility of initiating the proper administrative proceedings or at least making [the student] aware of what proceedings could be initiated if *he* so chose." (emphasis added).

[¶24] On September 21, Dorothy responded to Berg's September 12 letter and requested a hearing to challenge Doe's long term suspension. Berg responded with a letter dated September 29 in which he stated that Doe was not on a long-term suspension because he considered Doe's suspension as having ceased on September 13, the date of the IEP meeting. Consequently, Berg stated no option for a hearing was available since "there is no long-term suspension presently in effect which could result in an appeal to the school board and a hearing before the school board." (plaintiff's exhibit C). Again, the Court disagrees with Berg's assertion that there was no long-term suspension. Doe was removed from his regular classes for 38 days. When Dorothy requested a hearing to challenge Doe's long-term suspension, the defendants should have complied. Because a hearing was never held in which Doe was allowed to challenge his suspension, the remaining Administrative Rules regarding a long term suspension (24:04:03:04-08) are not material to the Court's decision. It is clear, however, that the defendants failed to comply with the statutory and administrative requirements giving Doe at least the opportunity to

challenge his suspension. The defendants violated the rights of Doe and Dorothy and are liable for such violations.

[¶25] There are no genuine issues of material fact to prevent a summary judgment in favor of plaintiffs to the effect that liability exists. The motions of the defendants are without legal merit and should be denied.

## ORDER

[¶26] Now, therefore,

[¶27] IT IS ORDERED:

    (1) Plaintiffs' motion for summary judgment as to liability, Doc. 34, is granted.

    (2) Defendants' motion for summary judgment, Doc. 48, is denied.

    (3) Defendants' motion for reconsideration, Doc 68, is denied.

[¶28] Dated this 24th day of November, 2008

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Paepke
          DEPUTY
(SEAL)